J-S63019-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| TROY ANTHONY ROBINSON, | |
| Appellant | No. 807 EDA 2015 |

Appeal from the Judgment of Sentence February 19, 2015
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0005169-2012

BEFORE:  FORD ELLIOTT, P.J.E., SHOGAN and FITZGERALD,[*] JJ.

MEMORANDUM BY SHOGAN, J.:                **FILED NOVEMBER 18, 2016**

Appellant, Troy Anthony Robinson, appeals from the judgment of sentence entered on February 19, 2015, following his conviction on October 27, 2014, by a jury of aggravated assault, possession of a firearm without a license, carrying a firearm in public in Philadelphia, and possession of an instrument of crime ("PIC"), and by the court of possession of a firearm by a prohibited person *via* a bifurcated waiver trial.  Trial Court Opinion, 2/12/16, at 2.  We affirm.

The trial court summarized the facts of the crime as follows:

> On November 24, 2011, at approximately 12:30 PM, Officer Timothy Fitzgibbon (hereinafter "Officer Fitzgibbon["]) of the Philadelphia Police Department responded to a radio call

---

[*] Former Justice specially assigned to the Superior Court.

regarding a robbery in progress on Greeby Street in the Oxford Circle section of Philadelphia, PA. 10/23/2014 Notes of Testimony (N.T.) at 29. The radio call contained an accompanying description of four (4) African American males who were believed to be involved in the robbery. Id. While en route to the scene in his marked police patrol vehicle, Officer Fitzgibbon first observed appellant walking southbound on Cranford Street. Id. at 30. Officer Fitzgibbon's attention was initially drawn to appellant due to appellant's close proximity to the location of the recent robbery. Id. As Officer Fitzgibbon drew closer to appellant, he observed appellant conversing on his cellular phone. Id. at 33. It is at this time that Officer Fitzgibbon overheard appellant repeatedly state "it's going down." Id.[1] Due to the nature of appellant's statement, and in response to report of a very recent robbery nearby, Officer Fitzgibbon, while still inside his patrol vehicle, asked appellant if appellant could speak with him for a moment. Id. at 34. In response to this request, appellant began to walk towards Officer Fitzgibbon and proceeded to retrieve a firearm from a pocket located on the left side of his body. Id. 34-35. Appellant then raised the firearm and pointed it in the direction of Officer Fitzgibbon and his vehicle. Id. at 35. With appellant now closing in on Officer Fitzgibbon, Officer Fitzgibbon immediately "threw" his patrol vehicle into "Drive" and very quickly advanced his patrol vehicle approximately three (3) to four (4) car lengths up Passmore Street, away from appellant. Id. at 37-38. At this time, Officer Fitzgibbon glanced in his rearview mirror and observed appellant standing in the street behind him with the firearm still pointed towards his patrol vehicle. Id. at 38. Believing that he had just heard appellant discharge the firearm, Officer Fitzgibbon proceeded up Passmore Street at a high rate of speed. Id. at 38-39.[8]

---

[1] Officer Fitzgibbon testified that he parked his car at an angle with his "driver's door . . . facing [Appellant] as [Appellant] walked toward" him. N.T., 10/23/14, at 31. He was "ten feet maybe, give or take a foot or two" away from Appellant. *Id*. at 32. The weather was clear, it was daylight, and the officer's window was down. *Id*. at 28, 32–33. Officer Fitzgibbon subsequently testified that initially, the distance was a bit further. *Id*. at 47–48.

[8] This court notes that the record reveals that the Commonwealth did not produce any evidence which conclusively established that appellant did, in fact, discharge the firearm in question.

Upon reaching the top of the block, Officer Fitzgibbon came in contact with other Philadelphia Police Officers and provided a description of appellant, which description was then broadcast over police radio. Id. at 41, 83. Shortly thereafter, Officer Fitzgibbon proceeded around the block back to Passmore Street whereupon he encountered appellant again; by this time appellant had been stopped by Philadelphia Police Sergeant James Hawe (hereinafter "Sergeant Hawe"). Id. at p.42. Sergeant Hawe stopped appellant because of appellant's resemblance to the flash information received over the radio via Officer Fitzgibbon. Id. at 83. Upon exiting his patrol vehicle, Officer Fitzgibbon pointed at appellant and stated "that's him." Id. at 88. As a result of Officer Fitzgibbon's unequivocal identification, appellant was placed in police custody. Id. at 88.

A search of the area was then conducted by Officer Fitzgibbon and his brother officers for a firearm and any fired cartridge casings. Id. at 49. During the search, Officer Fitzgibbon observed a firearm underneath a motor vehicle. Id. This firearm was located approximately five (5) feet from where Sergeant Hawe had stopped appellant. Id. at 89. Officer Fitzgibbon subsequently identified the firearm as the black semiautomatic handgun that had been wielded by appellant. Id. at 51-52. The Philadelphia Police Crime Scene Unit photographed the firearm. Id. at 93. Upon further examination of the firearm, it was determined that the firearm was loaded with ten (10) live cartridges in the magazine. Id. at 150.

Trial Court Opinion, 2/12/16, at 3–4.

Following Appellant's conviction of the above-described charges, sentence was deferred pending a presentence investigation. On January 13, 2015, the trial court sentenced Appellant to an aggregate term of imprisonment of ten years, three months to twenty years, six months. Appellant filed a timely motion to modify sentence, which the trial court

granted. On February 19, 2015, the trial court imposed an aggregate sentence of nine years, nine months to nineteen years, six months of imprisonment, as follows: fifteen to thirty months for aggravated assault; a consecutive term of sixty to 120 months for possession of a firearm by a prohibited person; a consecutive term of forty-two to eighty-four months for possession of a firearm without a license; a concurrent term of twelve to twenty-four months for carrying a firearm in public in Philadelphia; and a concurrent term of nine to eighteen months for PIC. Reconsideration of Sentence Order, 2/19/15; Trial Court Opinion, 2/12/16, at 2 n.7. Appellant filed a timely notice of appeal, and both Appellant and the trial court complied with Pa.R.A.P. 1925.

Appellant raises the following two issues for our review:

1. Was not the evidence insufficient to support [A]ppellant's conviction for aggravated assault, where the testimony did not establish beyond a reasonable doubt that he specifically intended to place a police officer in fear of imminent serious bodily injury, when he pointed an unchambered firearm at a car occupied by a police officer?

2. Did not the trial court err by imposing an unreasonable and excessive aggregate sentence by imposing consecutive sentences for aggravated assault (15 to 30 month); [Violation of the Uniform Firearm Act] VUFA 6105 (60 to 120 months); and VUFA 6106 (42 to 84 months),which yielded a maximum of almost twenty years for an offense in which no one was physically harmed?

Appellant's Brief at 3.

- 4 -

Appellant's first issue assails the sufficiency of the evidence supporting his conviction for aggravated assault. Our standard of review for a sufficiency-of-the-evidence claim is well settled:

The standard we apply in reviewing the sufficiency of evidence is whether, viewing all the evidence admitted at trial in the light most favorable to the verdict-winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our own judgment for that of the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances.

*Commonwealth v. Colon-Plaza*, 136 A.3d 521, 525–526 (Pa. Super. 2016) (quoting *Commonwealth v. Robertson-Dewar*, 829 A.2d 1207, 1211 (Pa. Super. 2003)). Furthermore:

The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the finder of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Mucci*, 143 A.3d 399, 409 (Pa. Super. 2016).

Appellant was convicted of aggravated assault as defined in 18 Pa.C.S. 2702(a)(6), which provides as follows:

**(a) Offense defined.**--A person is guilty of aggravated assault if he:

* * *

(6) attempts by physical menace to put any of the officers, agents, employees or other persons enumerated in subsection (c), while in the performance of duty, in fear of imminent serious bodily injury;

* * *

**(c) Officers, employees, etc., enumerated.**--The officers, agents, employees and other persons referred to in subsection (a) shall be as follows:

(1) Police officer.

18 Pa.C.S. § 2702(a)(6), (c)(1).

Appellant asserts that the evidence fails to establish that he "intended to place the officer in fear of serious bodily injury. The evidence established that [Appellant] merely pointed an unchambered handgun at the officer's vehicle, but not necessarily at the officer who was inside." Appellant's Brief at 17. Appellant maintains that case law cited by the trial court is distinguishable because additional facts bearing on state of mind are not present in this case.

> See e.g. Commonwealth v. Little, 614 A.2d 1146, 1152-53 (Pa. Super. 1992) (armed with a shotgun, the appellant shouted obscenities in a hostile manner, approached within three feet of deputies, and ordered officers off her property); Commonwealth v. Hudgens, 582 A.2d 1352, 1357 (Pa. Super. 1990) (armed with a sword, the appellant touched the victim in the hand with the sword, held it within five inches of the victim's body, and threatened to "get him"); Commonwealth v. Dicenzo, 393 A.2d 988, 988-89 (Pa. Super. 1978) (armed with a stone, the appellant threatened to bash the officer's brains in); see also Commonwealth v. Wood, 710 A.2d 626 (Pa. Super. 1998) (specific intent to cause serious bodily injury where appellant

actually discharged firearm into police vehicle); Commonwealth v. McCalam, 795 A.2d 412,415 -16 (specific intent to cause serious bodily injury where appellant, an expert marksman shot into car and missed victim by three inches).

Unlike Little, Hudgens, and Dicenzo, [Appellant] made no statements, and unlike Wood and McCalam, [Appellant] exhibited no conduct beyond mere pointing that bore on a specific intent to scare Officer Fitzgibbon. As the firearm was unchambered, his conduct could not have physically harmed Officer Fitzgibbon.

Appellant's Brief at 18.

The relevant statute required the Commonwealth to prove that Appellant attempted by physical menace to put a police officer, while in the performance of his duty, in fear of imminent serious bodily injury. 18 Pa.C.S. §§ 2702(a)(6), (c)(1). In **Commonwealth v. Fortune**, 68 A.3d 980, 984 (Pa. Super. 2013), this Court explained:

In the matter *sub judice*, there is no question that Appellant's actions did not cause the victim to sustain actual, serious bodily injury; therefore, Appellant's conviction for Aggravated Assault turns exclusively on whether he attempted to inflict serious bodily injury upon the victim. In this regard, this Court has stated the following:

Where the victim does not suffer serious bodily injury, the charge of aggravated assault can be supported only if the evidence supports a finding of an attempt to cause such injury. "A person commits an attempt when, with intent to commit a specific crime, he does any act which constitutes a substantial step toward the commission of that crime." 18 Pa.C.S.A. § 901(a). An attempt under Subsection 2702(a)(1) requires some act, albeit not one causing serious bodily injury, accompanied by an intent to inflict serious bodily injury. **Commonwealth v. Matthew**, 589 Pa. 487, 909 A.2d 1254 (2006). "A person acts intentionally with

- 7 -

> respect to a material element of an offense when ... it is his conscious object to engage in conduct of that nature or to cause such a result." **Id**. at 1257–58 (quotation omitted). "As intent is a subjective frame of mind, it is of necessity difficult of direct proof." **Id**. (citation omitted). The intent to cause serious bodily injury may be proven by direct or circumstantial evidence. **Id**.

> **Commonwealth v. Martuscelli**, 54 A.3d 940, 948 (Pa. Super. 2012) (emphasis added).

**Fortune**, 68 A.3d at 984–985.

The trial court correctly evaluated Appellant's sufficiency challenge, as follows:

> In the instant matter, Officer Fitzgibbon testified that after hearing appellant repeatedly state "it's going down" while conversing on his cellular phone, the officer asked if appellant could speak with him for a moment. N.T. at 33-34. Appellant responded by producing a firearm from his pocket and pointing it at Officer Fitzgibbon and his patrol vehicle. Id. at 34 -35. With his gun drawn and pointed at Officer Fitzgibbon, appellant then continued to proceed towards the officer. Id. at 37. In response to [A]ppellant's actions, Officer Fitzgibbon "floored the gas" and quickly and immediately fled from the area in his patrol vehicle. Id. at 38. While doing so, Officer Fitzgibbon glanced in his rearview mirror and observed appellant standing in the street with the firearm pointed towards his patrol vehicle. Id. Examination of the recovered firearm revealed that it was loaded with ten (10) cartridges in the magazine. Id. at 150.

Trial Court Opinion, 2/12/16, at 12.

Here, in response to the officer's request to speak with Appellant, Appellant drew a loaded, semi-automatic weapon from his pocket and pointed it directly at Officer Fitzgibbon. N.T., 10/23/14, 34–35. Appellant then quickly moved toward the officer, despite being ten to twenty feet

away. *Id*. at 48, 54–55. The officer testified that he "was scared," and he "leaned all the way to the right . . . covering myself from being exposed . . . because I wasn't sure if he was going to shoot at me." *Id*. at 37. Thus, we have no hesitation in concluding that the evidence supports the jury's verdict.

Appellant's second issue avers that the trial court imposed an excessive sentence where some of the individual periods of incarceration were imposed consecutively to each other. Appellant's Brief at 19. This is a challenge to the discretionary aspects of his sentence. It is well settled that a challenge to the discretionary aspects of a sentence is a petition for permission to appeal, as the right to pursue such a claim is not absolute. ***Commonwealth v. Treadway***, 104 A.3d 597, 599 (Pa. Super. 2014). "An appellant must satisfy a four-part test to invoke this Court's jurisdiction when challenging the discretionary aspects of a sentence," by (1) preserving the issue in the court below, (2) filing a timely notice of appeal, (3) including a Rule 2119(f) statement, and (4) raising a substantial question for our review. ***Commonwealth v. Tejada***, 107 A.3d 788, 797 (Pa. Super. 2015) (citation omitted).

Appellant has met the first three parts of the four-prong test: Appellant filed a timely appeal; Appellant preserved the issue in a post-sentence motion; and Appellant included a statement pursuant to Pa.R.A.P.

2119(f) in his brief.[2] Thus, we assess whether Appellant has raised a substantial question with respect to the issues he presents.

A determination as to whether a substantial question exists is made on a case-by-case basis. *Commonwealth v. Griffin*, 65 A.3d 932, 935 (Pa. Super. 2013). "A substantial question exists only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process." *Commonwealth v. Caldwell*, 117 A.3d 763, 768 (Pa. Super. 2015), *appeal denied*, 126 A.3d 1282 (Pa. 2015).

Appellant submits that a substantial question exists in this case because the consecutive sentences imposed on his convictions resulted in a manifestly excessive and unreasonable sentence. Appellant's Brief at 11–12. We conclude that Appellant has presented a substantial question. *See Dodge*, 77 A.3d at 1269 (stating that claims of a manifestly excessive sentence due to the imposition of consecutive sentences raises substantial question); *Commonwealth v. Swope*, 123 A.3d 333, 340 (Pa. Super.

---

[2] While Appellant included a Pa.R.A.P. 2119(f) statement, Appellant's Brief at 11, it is deficient because it fails to articulate how his sentence violates a particular provision of the Sentencing Code or is contrary to the fundamental norms underlying the sentencing process. *Commonwealth v. Dodge*, 77 A.3d 1263, 1271 (Pa. Super. 2013). However, because the Commonwealth has not objected to this deficiency, and because appellate review is not hampered, we decline to find waiver. *Id*.

2015) (challenge to the imposition of consecutive sentences as unduly excessive, together with claim that court failed to consider rehabilitative needs and mitigating factors presented substantial question).

The imposition of sentence is vested within the sound discretion of the trial court, which, absent an abuse of that discretion, will not be disturbed on appeal. "An abuse of discretion is more than an error in judgment—a sentencing court has not abused its discretion unless the record discloses that the judgment exercised was manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will." *Commonwealth v. Colon*, 102 A.3d 1033, 1043 (Pa. Super. 2014), *appeal denied*, 109 A.3d 678 (Pa. 2015). Moreover, the decision to impose consecutive rather than concurrent sentences is left to the discretion of the sentencing court. *Commonwealth v. Zirkle*, 107 A.3d 127, 133 (Pa. Super. 2014).

The record reflects that the trial court carefully considered the gravity of Appellant's offenses, his rehabilitative needs, the protective needs of the community, and the impact of Appellant's crimes on his victim. At the sentencing hearing, the trial court stated:

> In fashioning a sentence, this court has considered the gravity of the offenses, the rehabilitative needs of [Appellant], the need[] to protect the community, the prior record score report, the mental health report, and the appropriate arguments from the Commonwealth, arguments of the defense, the letter on behalf of [Appellant] by his mother, as well as [Appellant's] allocution.

N.T., 1/13/15, at 35.

In addressing this issue in its Pa.R.A.P. 1925(a) opinion, the trial court explained:

> [T]his Court measured mitigating factors such as [A]ppellant's physical neglect and substance abuse from a young age, against the actions of [A]ppellant in the instant matter, which this court referred to as "one of the worst things that can happen in society." Id. at 33-34. This court also considered the fact that [A]ppellant has continuously been under county supervision since 2000. Id. at 34. Therefore, by engaging in the due diligence that is required when sentencing a defendant, this court did not abuse its discretion by imposing [consecutive] sentences.

Trial Court Opinion, 2/12/16, at 10. Thus, we conclude that the trial court considered all necessary factors and did not abuse its discretion in imposing some terms of incarceration to run consecutively and some concurrently.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 11/18/2016