**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Chadworth R. ROBERTSON–DEWAR, Appellant.**

Superior Court of Pennsylvania.

Submitted May 5, 2003.
Filed July 29, 2003.

Deborah Lux, Public Defender, Bellefonte, for appellant.

Karen E. Kuebler, Asst. Dist. Atty., Bellefonte, for Com., appellee.

BEFORE: ORIE MELVIN, TODD and TAMILIA, JJ.

OPINION BY ORIE MELVIN, J.:

¶ 1 Appellant, Chadworth R. Robertson-Dewar, appeals from the judgment of sentence entered by the trial court following his convictions in a bench trial of thirty counts related to possession and dissemination of internet child pornography. He appeals on the grounds of insufficiency of the evidence as it relates to the failure to provide any expert testimony establishing the ages of the persons depicted. We affirm.

¶ 2 The pertinent facts and procedural history may be summarized as follows. On November 22, 2001, Appellant was arrested by Trooper Jon S. Nelson of the Pennsylvania State Police Bureau of Criminal Investigations, Computer Crimes Unit, and charged with ten (10) counts of Sexual Abuse of Children, 18 Pa.C.S.A. § 6312(d) (possessing child pornography); ten (10) counts of Sexual Abuse of Children, 18 Pa.C.S.A. § 6312(c) (disseminating child pornography); and ten (10) counts of Criminal Use of Communication Facility, 18 Pa.C.S.A. § 7512(a). Trooper Nelson began an investigation of an individual using the name "Andariel" in an Internet Rely Chat (IRC) in a known child pornography channel called "Preteen 002." N.T. Trial, 4/9/02, at 3–9. Trooper Nelson testified that in order to be allowed to participate in an IRC, an Internet Protocol (IP) address, a local host name provided by the Internet Service provider and a nickname are required. The Trooper's search revealed that Andariel made the following offer in his file server (F-serve)[1] program:

Offering very categorized quality teen and prepics with very rare movies. Will trade leach for series of teens 13–17. MSG me if interested.

Only interested in action or mast for trade. Three of four people with a sense for quality currently on-line V2.1. *Id.* at 19. Trooper Nelson explained that "leach" means unhindered access, and this person was claiming to have very rare movies that he is willing to trade leach for a series of teen pictures with an age range of 13 to 17. *Id.* at 20. Trooper Nelson then performed a Domain Name Service (DNS) command to determine Andariel's IP address and local host name; he found that the PSU.edu, Penn State University, matched the registrants of the domain names and IP addresses. *Id.* at 21.

¶ 3 Trooper Nelson further testified that as of March of 2001, Andariel, was a channel operator in three channels: "preteen 002," "preopts," and "Andariel" and he learned from Penn State University that the IP address on March 1, 2001 and March 2, 2001 was assigned to a Glenn Scott Hockey. *Id.* at 22, 32. On March 27, 2001, Trooper Nelson executed a search warrant for all computers at the residence of Glenn Scott Hockey. Appellant was present at the time when the warrant was executed. Trooper Nelson seized a computer belonging to Glenn Scott Hockey. Appellant was briefly interviewed at the apartment and then again at the State College Police Station. Appellant admitted to using his roommate's computer and using his roommate's Penn State University dial-up account. *Id.* at 45. After being read his rights Appellant gave a statement, which was introduced into evidence at trial. Specifically his statement provided as follows:

[Q:] Did you ever run an F-serve in IRC?

---

1. Trooper Nelson described a file server as "a one-on-one communication with you and somebody's computer." *Id.* at 18.

[A:] Yeah, as an experiment.

[Q:] What channels did you operate it in?

[A:] About ten preteen channels that I'm in.

[Q:] What do you mean by preteen?

[A:] People younger than 17.

[Q:] Are these sex related channels?

[A:] Yeah.

[Q:] So these were channels dealing in child pornography?

[A:] Yeah.

[Q:] Did your F-serve offer child pornography?

[A:] Only whatever was uploaded.

[Q:] Isn't it correct that files were uploaded to your server and then you viewed them and placed them into appropriately labeled folders?

[A:] Yes, this is true.

[Q:] In the rules for your F-serve, you stated you did not want any files of people under ten. Why is that?

[A:] Because children having sex offends me. I did not want that on my hard drive.

[Q:] Why did you stop at ten?

[A:] I did not want to set an age so high that no one would come to my F-serve. At the same time, I didn't want to see anything like infants.

[Q:] When was the last time you ran your F-serve?

[A:] At least three weeks ago.

[Q:] Why did you stop?

[A:] I found out that [sic] what I wanted—I found out what I wanted to about F-serves. I didn't like the pornography. It didn't do anything for me, so I deleted it.

[Q:] How often and how long did you run your F-serve for?

[A:] I ran it the week of spring break and either the week before or after for a total of two weeks.

[Q:] Were you a channel operator in any of these channels?

[A:] Someone I know gave me a program that made me a channel opt in all the channels that I was in.

[Q:] They were all child pornography channels?

[A:] No.

[Q:] How many were, and how many weren't?

[A:] About 50 percent of the channels I was opted in were child pornography for about five total.

* * * *

[Q:] Do you know that it's illegal to possess and trade child pornography?

[A:] Yes.

[Q:] What is your definition of child pornography?

[A:] Any picture depicting any person under ten having sex.

[Q:] So what are pictures of people between 10 and 18 having sex?

[A:] That's teen or preteen pornography.

[Q:] Do you know that's illegal as well?

[A:] I suspected.

[Q:] What was occurring in the child pornography channels you were opt in?

[A:] As far as I know, people came there to trade pictures of teens, preteens, and sometimes children having sex.

[Q:] Were you also a channel opt in a channel called preopts? If so, what was the nature of this channel?

[A:] Yeah. The other members of the channel were generally opts in rooms pertaining to trading pornography.

* * * *

[Q:] Is there anything you want to add?

[A:] Yeah. I didn't join IRC looking for child porn. I don't find it exciting or arousing. I joined looking for scripting help.

*Id.* at 37–41.

¶ 4 Trooper Alan W. Montgomery also testified that he copied the hard drive used by Appellant and produced eight (8) CDs using forensic software. *Id.* at 53. A number of the files in the hard drive had been erased or were no longer capable of being viewed. *Id.* at 54. However, Trooper Montgomery was able to recover deleted items and extracted the images into two (2) work copy CDs. These CDs were introduced into evidence at trial. *Id.* at 55. Following a bench trial Appellant was convicted on all thirty (30) counts. On June, 13, 2002, Appellant was sentenced to consecutive periods of incarceration of three (3) months to six (6) months on each of counts one through ten for sexual abuse of children pursuant to 18 Pa.C.S.A. § 6312(c) resulting in a total aggregate sentence of two and one-half (2½) years to five (5) years in a state correctional institution with credit for time served. Counts twenty-one (21) through thirty (30) (Criminal Use of Communication Facility, 18 Pa. C.S.A. § 7512(a)) merged for sentencing purposes, and separate judgments of sentence were not imposed on counts eleven (11) through twenty (20), under 18 Pa. C.S.A. § 6312(d), as counsel for the Commonwealth and Appellant agreed it would be inappropriate under the circumstances. This timely appeal followed.

¶ 5 Appellant's sole issue challenges the sufficiency of the evidence to sustain his convictions for sexual abuse of children.

The standard we apply in reviewing the sufficiency of evidence is whether, viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for that of the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Lambert,* 795 A.2d 1010, 1014–1015 (Pa.Super.2002) (internal citations and quotation marks omitted).

¶ 6 Appellant was convicted of twenty counts of Sexual Abuse of Children pursuant to 18 Pa.C.S.A. § 6312(c) and 18 Pa. C.S.A. § 6312(d). At the time of Appellant's commission of these offenses the relevant subsections provided:

**(c) Dissemination of photographs, videotapes, computer depictions and films.**—Any person who knowingly sells, distributes, delivers, disseminates, transfers, displays or exhibits to others, or who possesses for the purpose of sale, distribution, delivery, dissemination, transfer, display or exhibition to others, any book, magazine, pamphlet, slide, photograph, film, videotape, computer depiction or other material depicting a

child under the age of 18 years engaging in a prohibited sexual act or in the simulation of such act is guilty of a felony of the third degree.

**(d) Possession of child pornography.**—Any person who knowingly possesses or controls any book, magazine, pamphlet, slide, photograph, film, videotape, computer depiction or other material depicting a child under the age of 18 years engaging in a prohibited sexual act or in the simulation of such act is guilty of a felony of the third degree.

**(e) Evidence of age.**—In the event a person involved in a prohibited sexual act is alleged to be a child under the age of 18 years, competent expert testimony shall be sufficient to establish the age of said person.

*Id.*

¶ 7 For purposes of this case, in order to prove these crimes the Commonwealth must establish that Appellant knowingly disseminated and possessed computer depictions of children under the age of 18 years engaging in a prohibited sexual act or in the simulation of such act. Appellant contends that the Commonwealth failed to establish that the individuals depicted in the computer images were actually children under the age of 18 years.[2] He submits that the prosecution was required to present the testimony of a pediatrician or other medical expert to provide an expert opinion, based on body development, maturity, physical appearance, etc., to establish age. We disagree.

¶ 8 Proof of age, like proof of any other material fact, can be accomplished by the use of either direct or circumstantial evidence, or both. *Lambert, supra.* The proof necessary to satisfy the element of age in a dissemination or possession of child pornography case is not limited to expert opinion testimony. Subsection (e) merely allows that if competent expert testimony is presented it shall be sufficient to establish the age element of the crime. This subsection does not mandate such proof in order to sustain a conviction. Rather, the outward physical appearance of an alleged minor may be considered by the trier of fact in judging the alleged minor's age. Whether expert testimony is necessary to aid the trier of fact on this element of the crime must be determined on a case-by-case basis. This question was examined by the Fifth Circuit Court of Appeals in *United States v. Katz*, 178 F.3d 368 (5th Cir.1999), which stated:

> The threshold question—whether the age of a model in a child pornography prosecution can be determined by a lay jury without the assistance of expert testimony—must be determined on a case by case basis. As the government correctly points out, it is sometimes possible for the fact finder to decide the issue of age in a child pornography case without hearing any expert testimony. However, in other cases, the parties have been allowed to present conflicting expert testimony. In yet other cases, one party presents expert testimony, while the other does not. A case by case analysis will encounter some images in which the models are prepubescent children who are so obviously less than 18 years old that expert testimony is not necessary or helpful to the fact finder. On the other hand, some cases will be based on images of models of sufficient maturity that there is no need for expert testimony. However, in this case, in which the government must prove that a model, who is post-puberty but appears quite young, is less than eighteen years old, expert testimony

---

**2.** Appellant does not argue that there was insufficient evidence to establish the *mens rea* element of the crimes or that the persons depicted were engaging in prohibited sexual acts as defined in § 6312(a).

may well be necessary to assist the trier of fact to understand the evidence or to determine a fact in issue.

*Id.* at 373 (citations omitted). We are persuaded by this cogent analysis and apply it to this case on review.

█ ¶ 9 Here, the trial judge, sitting as fact-finder, viewed all of the photographs and videos seized from Appellant's computer and determined that expert testimony was not necessary to assist him in determining the age of the persons depicted in the computer images. *See* Trial Court Opinion at 3. In fact, the trial court stated at one point in the trial "I don't know the age of the person on that image, but the person appeared to be prepubescent. I'll estimate around the age of ten." N.T. Trial, 4/9/02, at 93–94. Appellant has offered no argument or analyses that any of the persons depicted in the pornographic images were adults that merely looked like children or even that any of the persons were "post-puberty but appeared quite young." *Katz, supra.* Appellant only argues generally that the judge cannot estimate as to age. We reject the notion that in every child pornography case the fact-finder is unable to view the images along with whatever other evidence is presented and make a determination as to age without the assistance of expert testimony.

¶ 10 Given the anonymity of the internet, the identity of children depicted and their whereabouts are frequently unknown. Thus, conventional means of proving age such as birth certificates or testimony of a relative are usually unavailable. To require law enforcement officials to track down and identify the children depicted in order to successfully prosecute a child pornography case would rip the teeth out of the child pornography statute and destroy its efficacy as a preventive measure in the sexual exploitation of children. Therefore, the legislature has vested the trier of fact with the function of determining the age of the child depicted and further allows for this element to be sufficiently established through competent expert testimony in close cases. This Commonwealth has long maintained that expert testimony is not required in obscenity prosecutions, and the determination is to be made on a case-by-case basis. *See Commonwealth v. Rodgers,* 459 Pa. 129, 135, 327 A.2d 118, 121 (1974) (stating "[o]ur decision today is cognizant of the continuing duty of this Court ... to make an ad hoc, case-by-case determination of whether trial exhibits are legally obscene."). Rather, we have consistently held since 1974 that "printed publications and photographs themselves are enough evidence for a jury, in applying our statewide standard, to determine whether the average person would find the materials appealing to prurient interests." *Long v. 130 Market St. Gift & Novelty,* 294 Pa.Super. 383, 440 A.2d 517, 522 (1982) (citing *Rodgers, supra* ). *See also, Commonwealth v. Croll,* 331 Pa.Super. 107, 480 A.2d 266 (1984) (holding Commonwealth need not produce expert testimony of statewide community standards). As is the case with determining obscenity under *Rodgers,* we see no reason why the trier of fact based on everyday observations and common experiences cannot assess the age of the children depicted with the requisite degree of certainty to satisfy the standard of proof beyond a reasonable doubt. Accordingly, we find the trial court was within proper bounds to determine that it did not need the assistance of expert testimony in this case to determine the age of the models depicted in the images offered into evidence. Moreover, our review indicates that there was additional evidence presented to establish age, and, thus, the trial court did not merely rely on its own estimate. Trooper Nelson repeatedly testified that he was familiar

with many of the images he found on Appellant's computer as being the same images of child pornography substantiated in other investigations. Viewing all of the evidence presented in the light most favorable to the verdict winner, and drawing all reasonable inferences therefrom, it is clear that sufficient evidence was presented to establish that the persons depicted in the photographs and videos were under 18 years of age. As such, the evidence was sufficient to sustain the guilty verdicts.

¶ 11 Judgment of sentence affirmed.