J-S84013-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| MAURICE DERICK EDWARDS | : | |
| | : | |
| Appellant | : | No. 908 MDA 2017 |

Appeal from the Judgment of Sentence May 18, 2017
In the Court of Common Pleas of York County Criminal Division at No(s):
CP-67-CR-0001022-2014

BEFORE:  SHOGAN, J., LAZARUS, J., and OTT, J.

MEMORANDUM BY SHOGAN, J.:                **FILED FEBRUARY 23, 2018**

Appellant, Maurice Derick Edwards, appeals from the judgment of sentence entered on May 18, 2017, in the York County Court of Common Pleas.  We affirm.

The trial court set forth the facts and procedural history of this matter as follows:

> On January 10, 2014 around 9:00 p.m., Officer Benjamin Smith and Officer Vogel were on patrol in the area of South George Street and Princess Street in York in a marked police car. The intersection was well lit by street lights and other business lights surrounding.
>
> While they were yielding to northbound traffic, Officer Smith saw a vehicle without its headlights on at night on the east side of the intersection on Princess Street. As the officers turned onto Princess Street toward that vehicle, the officer looked at the driver, who was within four to five feet of him. Officer Smith made eye contact with the driver and described the look at the driver as extremely well, noting that Officer Smith was not driving faster than five, ten miles an hour. Then, Officer

Smith turned around to pull the driver over for the equipment violation. By the time the officers caught up with the vehicle, the vehicle still did not have its headlights on, and, so, Officer Vogel ran the information for the vehicle. When the vehicle turned onto Jackson Street, Officer Smith turned on the red and blue emergency lights, and the police car chirped. The vehicle did not pull over and continued east on East Jackson, without stopping at several safe, well-lit spots.

Then, Officer Smith turned on the sirens. The vehicle turned on a couple turn signals and turned right onto McKenzie Street from Jackson Street. While the driver's speed started to increase after the turn onto McKenzie Street, the speeds were not that excessive. However, the vehicle had gotten a lead on the officers. Because of weather and time, the officer's supervisor then ordered the officers to terminate the pursuit, and they stopped on McKenzie Street. Officer Smith observed the vehicle increase speed, run through a stop sign and turn onto another road, where they lost sight of the vehicle.

The police car was equipped with a dashboard camera which automatically starts recording thirty seconds before an officer turns on the emergency lights. The recording of the pursuit with the vehicle was played during trial.

During the pursuit, Officer Vogel had run the license plate of the vehicle, and found out that the registered owner was Lori (or Laura) Keys. Then, Officer Vogel ran a MISSILE warrant check on Keys' address and discovered that [Appellant] lived there and had an outstanding warrant. Officer Vogel ran a warrant check during that time and pulled up Appellant's JNet, driver's license, photos, based on that warrant information. At the time, Officer Smith identified the man in the photo from the JNet, drivers license as the driver of the vehicle. Officer Smith was one hundred percent certain about that identification that night and during trial. The officer identified the photo as [Appellant].

An officer was sent out to the registered vehicle owner's address, but [Appellant] was not there. Officer Smith noted that he did not feel the need to follow up with Laura Keys since then.

During the trial, Appellant testified that on January 10, 2014, he was at a bar from around 8:00 p.m. until around 11:30

p.m. with another woman. Appellant testified that Laura Keys is his mother and that he uses Laura Keys' address for mail. However, he stated during trial that [he] did not live there at the time or stay there that evening.

Appellant testified that at the time, his mother was in a relationship with Derick Speller who, like [Appellant], was a dark-skinned man, with a beard, nice hair, and good-trim hair. Speller was about two years older than the Appellant, and Speller's picture was introduced at trial. Appellant stated that on that date, he was not aware of any arrest warrant, though he did find out about a ticket warrant later on.

The Appellant's mother, Laura Keys, also testified during trial. She testified that on that date and time, Derick Speller was driving the vehicle, and she was a passenger in the car. She stated the following:

> a police vehicle turned his lights on . . . . She kind of assumed they were in the officer's way. She wasn't quite sure, so they kind of tried to stop, tried to wait to see if someone was getting out, but felt like they were in the way, so what she instructed the driver to do because . . . it was not clear whether they were being pulled over or not, was to turn onto this one side street. If the vehicle would have turned, she would have asked the driver to stop. The officer proceeded to just go by and there was no speeding, no fleeing, no eluding.

[N.T., 5/18/17, at 42]

When an officer arrived at her home that night, she told him that Appellant was not driving the vehicle. Several years later, Keys wrote a statement and gave it to the Public Defenders' Office.

Trial Court Opinion, 7/14/17, 2-7 (internal quotation marks and footnotes omitted).

Appellant was charged with fleeing or attempting to elude police officers, careless driving, duties at stop sign, and failure to display lighted

- 3 -

lamps.[1]  Following a nonjury trial, the trial court found Appellant guilty of fleeing or attempting to elude police officers, duties at stop sign, and the headlamp violation.  N.T., 5/18/17, at 62.  The trial court found Appellant not guilty of careless driving.  *Id.*  On the fleeing or attempting to elude count, the trial court sentenced Appellant to a term of sixty days to twenty-two months of incarceration.  The trial court imposed $25.00 fines on the convictions for duties at stop sign and the headlamp violation.  This timely appeal followed.  Both the trial court and Appellant have complied with Pa.R.A.P. 1925.

On appeal, Appellant raises the following issue for this Court's consideration:

> Whether the Commonwealth[] presented sufficient evidence at trial to sustain the trial court's verdict finding [Appellant] guilty of Fleeing or Attempting to Elude a Police Officer, Duties at Stop Sign, and Period For Requiring Lighted Lamps, specifically whether the police officer's momentary and fleeting glance at the eyes of the vehicle driver was sufficient to identify the Appellant as the driver, despite the testimony from the Appellant's mother that her then-boyfriend and not the Appellant was driving the vehicle that evening?

Appellant's Brief at 3 (footnotes omitted).

In reviewing the sufficiency of the evidence, we must determine whether the evidence admitted at trial and all reasonable inferences drawn therefrom, viewed in the light most favorable to the Commonwealth as

---

[1] 75 Pa.C.S. §§ 3733(a), 3714(a), 3323(b), and 4302(a)(1), respectively.

verdict winner, were sufficient to prove every element of the offense beyond a reasonable doubt. ***Commonwealth v. Diamond***, 83 A.3d 119 (Pa. 2013). "[T]he facts and circumstances established by the Commonwealth need not preclude every possibility of innocence." ***Commonwealth v. Colon-Plaza***, 136 A.3d 521, 525-526 (Pa. Super. 2016) (quoting ***Commonwealth v. Robertson–Dewar***, 829 A.2d 1207, 1211 (Pa. Super. 2003)). It is within the province of the fact-finder to determine the weight to be accorded to each witness's testimony and to believe all, part, or none of the evidence. ***Commonwealth v. Tejada***, 107 A.3d 788, 792-793 (Pa. Super. 2015). The Commonwealth may sustain its burden of proving every element of the crime by means of wholly circumstantial evidence. ***Commonwealth v. Mucci***, 143 A.3d 399, 409 (Pa. Super. 2016). Moreover, as an appellate court, we may not re-weigh the evidence and substitute our judgment for that of the fact-finder. ***Commonwealth v. Rogal***, 120 A.3d 994 (Pa. Super. 2015).

Appellant does not argue that the Commonwealth failed to establish the elements of fleeing or attempting to elude police officers, duties at a stop sign, and failure to display lighted lamps. The entirety of Appellant's argument focuses only on Officer Smith's identification of Appellant as the driver. Appellant's Brief at 6-11.

This Court has recognized that:

[e]vidence of identification need not be positive and certain to sustain a conviction. Although common items of clothing and

- 5 -

general physical characteristics are usually insufficient to support a conviction, such evidence can be used as other circumstances to establish the identity of a perpetrator. Out-of-court identifications are relevant to our review of sufficiency of the evidence claims, particularly when they are given without hesitation shortly after the crime while memories were fresh. Given additional evidentiary circumstances, any indefiniteness and uncertainty in the identification testimony goes to its weight.

*Commonwealth v. Ovalles*, 144 A.3d 957, 969-970 (Pa. Super. 2016) (quoting *Commonwealth v. Orr*, 38 A.3d 868, 874 (Pa. Super. 2011) (*en banc*)) (internal quotation marks and citations omitted). Moreover, "[a] challenge to the weight of the evidence is distinct from a challenge to the sufficiency of the evidence in that the former concedes that the Commonwealth has produced sufficient evidence of each element of the crime, but questions which evidence is to be believed." *Commonwealth v. Charlton*, 902 A.2d 554, 561 (Pa. Super. 2006).

Appellant asserts that the Commonwealth's evidence failed to prove that Appellant was the driver of the vehicle. Appellant's Brief at 9. Specifically, Appellant avers that because Officer Smith "only caught a fleeting glimpse at the driver," the Commonwealth failed to prove that Appellant was the driver beyond a reasonable doubt. Appellant's Brief at 9. In support of his argument, Appellant points to his statement that he was not in his mother's car that night, and his mother's testimony that her then-boyfriend, Derick Speller, was driving the car at the time of the infractions and pursuit. *Id.* at 8-9. After review, we are constrained to conclude that Appellant's claim of error is directed entirely to the credibility of the

testimony presented at trial, and as such, it is a challenge to the weight, not the sufficiency, of the evidence. ***Commonwealth v. Palo***, 24 A.3d 1050, 1055 (Pa. Super. 2011).[2]

The record reveals, however, that Appellant failed to preserve this issue. Appellant was required to raise before the trial court any challenge to the weight of the evidence in either an oral or written motion pursuant to Pa.R.Crim.P. 607. Accordingly, Appellant has waived this claim. ***See Commonwealth v. Lopez***, 57 A.3d 74, 80-81 (Pa. Super. 2012) (holding that, pursuant to Pa.R.Crim.P. 607, a challenge to the weight of the evidence must be raised with the trial judge or it will be deemed waived).

Because Appellant has waived his sole issue on appeal, he is not entitled to appellate relief. Accordingly, we affirm Appellant's judgment of sentence.[3]

---

[2] While the trial court opinion addressed Appellant's claim of error based on the sufficiency of the evidence, because Appellant did not properly present the trial court a challenge to the weight of the evidence, we may affirm the decision of a trial court on any correct basis. ***See Commonwealth v. Wilcox***, 174 A.3d 670, 674 n.4 (Pa. Super. 2017) (explaining that the Superior Court is not bound by the rationale of the trial court, and we may affirm the trial court's order on any basis) (citation omitted).

[3] Assuming, for the sake of argument, that Appellant had preserved his weight claim, he would be entitled to no relief. "The weight of the evidence is exclusively for the finder of fact, which is free to believe all, part, or none of the evidence, and to assess the credibility of the witnesses.... An appellate court cannot substitute its judgment for that of the jury on issues of credibility." ***Lopez***, 57 A.3d at 80-81 (internal citations omitted). Herein, the trial court found Officer Smith's testimony more credible than that of

*(Footnote Continued Next Page)*

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/23/2018

---

*(Footnote Continued)*

Appellant or Appellant's mother. Trial Court Opinion, 7/14/17, at 8-9. Officer Smith testified he was "one hundred percent" certain Appellant was operating the vehicle. N.T., 5/18/17, at 22. Because we may not disturb the trial court's credibility determinations, Appellant's challenge to the weight of the evidence, if preserved, would have failed.